# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:18-cv-00641-FDW

| | |
|---|---|
| ADRIAN D. MURRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| ) | |
| WARDEN, Lanesboro Correctional, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**THIS MATTER** comes before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983. [Doc. 17]. See 28 U.S.C. §§ 1915(e); 1915A. On March 3, 2019, the Clerk of Court entered an order waiving Plaintiff's initial filing fee and directed the correctional facility to transmit partial payments from Plaintiff's inmate trust account. [Doc. 11]. Plaintiff, therefore, is proceeding in forma pauperis. [Id.]

## I. BACKGROUND

Pro se Plaintiff Adrian D. Murray ("Plaintiff") is a prisoner of the State of North Carolina, currently incarcerated at Scotland Correctional Institution in Laurinburg, North Carolina. Until recently, Plaintiff was incarcerated at Lanesboro Correctional Institution ("LCI"). Plaintiff filed this action on November 29, 2018, pursuant to 42 U.S.C. § 1983, and filed an Amended Complaint on May 24, 2019. [Docs. 1, 17]. In his Amended Complaint, Plaintiff names four Defendants: (1) John Doe, identified as the Warden of LCI; (2) FNU Mott, identified as a Sergeant at LCI; (3) FNU McCoy, identified as an officer of LCI; and (4) David Guice, identified as the Secretary of the N.C. Department of Public Safety ("NCDPS"). [Doc. 17].

Plaintiff alleges that Defendant McCoy, acting in accordance with a pattern or custom at LCI of failing to follow certain NCDPS security and safety policies, allowed another inmate to fashion a weapon out of an exit sign grate located in the Alpha pod housing unit at LCI and violently attack and repeatedly stab the Plaintiff. Specifically, Plaintiff contends that, while on rounds, Defendant McCoy saw and took no action with respect a grate that had been partially removed by another inmate. After Defendant McCoy left, the inmate subsequently continued to remove the grate, dismantled it, and sold the pieces thereof to other prisoners. When Defendant McCoy returned to Alpha pod on a subsequent round, she noticed the missing grate and either failed to report it and/or her supervisor, Defendant Mott, failed to act in response thereto. Over the course of the next twenty to thirty days, several other grates, presumably also in the Alpha pod, were taken down by inmates and converted to shanks. One of the prisoners who purchased a piece of the first missing grate used it to stab the Plaintiff some 60 days later.

Further, Plaintiff alleges that Defendant McCoy failed to protect Plaintiff during the attack by being distracted and disregarding her duties to monitor inmates from her position in the control booth. Plaintiff also alleges that there was no floor officer on duty at the time of Plaintiff's attack because LCI was understaffed and that either Defendant Doe and/or Defendant Guice are responsible for determining safe staffing levels. Plaintiff further alleges that Defendants Doe and Mott failed to properly train Defendant McCoy with respect to her duties in the control booth and failed to correct the LCI staff's habitual failure to follow safety procedures. Plaintiff claims that this conduct violates his Fifth, Eighth and Fourteenth Amendment rights.

Plaintiff also complains that, while in segregation after the attack, LCI segregation staff refused him access to grievance forms and that some unknown member of the segregation staff interfered with Plaintiff's attempt to mail a copy of a self-prepared grievance letter home for

photocopying. This unknown segregation staff employee allegedly opened Plaintiff's grievance letter, held the letter for over 20 days, and returned it to Plaintiff with a sticker saying, "not deliverable as addressed." Plaintiff then double checked that the address was, in fact, correct. Plaintiff claims this conduct violated Plaintiff's "First, Fifth, and Fourteenth Amendment right of access to the courts" by refusing him access to the grievance process and his First Amendment right of free speech by unlawfully censoring Plaintiff's outgoing mail. Finally, Plaintiff claims that Defendant John Doe and unknown staff members acted in retaliation of Plaintiff's grievances by destroying a substantial amount of evidence relevant to Plaintiff's attack and falsifying reports related thereto.

As relief, Plaintiff seeks compensatory and punitive damages for his various injuries from the attack, for mental and emotional distress, and for mental health counseling after his release in July 2020.

## II.    STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972).

However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

### A. Failure to Protect

"Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quotation marks omitted). As such, the Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials "a duty . . . to protect prisoners from violence at the hands of other prisoners." Id. at 833 (quotation marks omitted). Still, not "every injury suffered by one prisoner at the hands of another . . . translates into constitutional liability for prison officials responsible for the victim's safety." Id. at 834. To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm. Id. at 834.

"Deliberate indifference" in this context is a subjective standard in that the prison official must actually have known or been aware of the excessive risk to inmate safety. Id. at 835-37. It is not sufficient that the official should have known of the risk. Id. A plaintiff can, however, prove an official's actual knowledge of a substantial risk to his safety "in the usual ways, including inference from circumstantial evidence." Id. at 842. In other words, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." Id.

Prison officials may escape liability for deliberate indifference claims in several ways.

4

They "might show, for example, that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." Id. at 844. "In addition, prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Id. "Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable" on a failure-to-protect claim. Id. at 845.

The Court finds that, taking Plaintiff's allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, Plaintiff's Eighth Amendment claim survives initial screening under 28 U.S.C. § 1915(e). That is, Plaintiff has stated a cognizable claim of violation of Plaintiff's Eighth Amendment rights against Defendants.[1]

As to Defendant Guice, identified as the Secretary of the NCDPS, it is well established that he cannot be held liable merely by virtue of his supervisory based on respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). Here, Plaintiff alleges no personal participation by Defendant Guice, only that "the determination of safe staffing levels is the responsibility of [the Warden] and/or David Guice." [Doc. 17 at ¶ 66]. As such, Plaintiff's claim against Defendant Guice will be dismissed.

**B.     Censorship of mail**

Plaintiff alleges that, on one occasion, an unknown segregation staff member opened, held,

---

[1] Plaintiff also alleges that the enumerated conduct violates his Fifth and Fourteenth Amendment rights, but he does explain how this conduct implicates those rights. [See Doc. 13 at ¶ 62]. Because Plaintiff's claim based on this conduct survives initial review based on the Eighth Amendment, the Court does not address these claims further here.

5

and returned the copy of a grievance letter Plaintiff sent to his family for photocopying, indicating that it was undeliverable to the stated address. The First Amendment protects a prison inmate's right to the free flow of incoming and outgoing mail. Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) (citing cases). The Fourth Circuit Court of Appeals has held, however, that "the opening and inspecting of an inmate's outgoing mail is reasonably related to legitimate penological interests, and therefore, constitutional." Altizer v. Deeds, 191 F.3d 540, 547-48 (4th Cir. 1999). Therefore, "although an inmate's First Amendment rights may be violated when his outgoing mail is censored, his First Amendment rights are not violated when his outgoing mail is simply opened and inspected for, among other things, contraband." Id. at 549. Even if opening Plaintiff's mail on one occasion and returning the mail undeliverable constitutes censorship sufficient to violate his First Amendment rights, Plaintiff has not named any Doe defendant allegedly responsible for this conduct. Plaintiff has not stated a claim on this issue. Accordingly, Plaintiff's First Amendment claim for mail censorship does not survive initial review under 28 U.S.C. § 1915(e).

**C.     Right of access to the courts and due process**

Plaintiff contends that Defendants violated his "First, Fifth, and Fourteenth Amendment right of access to the courts." [Doc. 17 at ¶¶ 69-81]. Regarding the failure to provide grievance forms to the Plaintiff and to mail Plaintiff's grievance letter to his family, again, Plaintiff has not named a Doe Defendant allegedly responsible for this conduct. Further, even if he had, the Supreme Court has held that the right of access to the courts "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis

v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id. A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Here, the Plaintiff does not allege any actual injury, other than "preventing Plaintiff from accessing the grievance process, and/or to prevent Plaintiff from alerting persons on the outside what was occurring." [Doc. 17 at ¶ 8]. Plaintiff was not prevented from filing a non-frivolous claim with the Court, nor does Plaintiff allege how his efforts were otherwise impeded. Further, "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). As such, Plaintiff has failed to state a claim for Constitutional violation based on an unknown staff member's failure to deliver a grievance letter to Plaintiff's family. This claim does not survive initial screening under 28 U.S.C. § 1915(e).

Second, Plaintiff alleges his rights were violated by the Warden "and/or other unknown staff member(s)" who, acting in retaliation of Plaintiff's grievances, destroyed evidence relevant to his attack. The Court finds that, taking Plaintiff's allegations as true for the purposes of initial review, and construing all inferences in Plaintiff's favor, this action survives initial screening under 28 U.S.C. § 1915(e) as to Plaintiff's claims based on this conduct under the First and Fourteenth Amendments. That is, Plaintiff has stated cognizable claims against Defendant Doe (the Warden) for violations of his First Amendment rights of access to the courts and to be free from retaliation and of his due process rights.

## IV. CONCLUSION

The Court finds that this action survives initial review as to Defendants Warden, FNU McCoy, and Sergeant L. Mott, except as to Plaintiff's claim under the First Amendment based on mail censorship. The Plaintiff's action does not survive initial review as to Defendant Guice.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's allegations survive initial review as to Defendants Warden, FNU McCoy, and Sergeant L. Mott, except as to Plaintiff's claim under the First Amendment based on mail censorship. See 28 U.S.C. §§ 1915(e); 1915A. The allegations do not survive initial review as to Defendant Guice and he is hereby **DISMISSED** as a Defendant in this matter.

2. This Court recently enacted Local Rule 4.3, which sets forth a procedure to waive service of process for current and former employees of the North Carolina Department of Public Safety ("NCDPS") in actions filed by North Carolina State prisoners. The Clerk of Court shall commence the procedure for waiver of service as set forth in Local Rule 4.3 for Defendants Warden, FNU McCoy, and Sergeant L. Mott, who are current or former employees of NCDPS.

Signed: June 17, 2019

Frank D. Whitney
Chief United States District Judge