# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION
### 3:18-cv-00641-MR

ADRIAN D. MURRAY,          )
)
        **Plaintiff,**        )
)
vs.                        )        <u>ORDER</u>
)
KENNETH A. BEAVER, et al.,   )
)
        **Defendants.**   )
_____ )

THIS MATTER comes before the Court on Defendants' Motion for Summary Judgment [Doc. 56] and on Plaintiff's Cross-Motion for Summary Judgment [Doc. 62].

## I.    PROCEDURAL BACKGROUND

Pro se Plaintiff Adrian D. Murray ("Plaintiff") was formerly a prisoner of the State of North Carolina incarcerated at Lanesboro Correctional Institution ("Lanesboro") in Polkton, North Carolina.[1]  Plaintiff filed this action on November 29, 2018, pursuant to 42 U.S.C. § 1983, and filed a verified Amended Complaint on May 24, 2019.  [Docs. 1, 17].  In his Amended Complaint, Plaintiff named four Defendants in their individual capacities: (1)

---

[1] Lanesboro has since been converted to a women's prison named Anson Correctional Institution.  Plaintiff was most recently housed at Scotland Correctional Institution in Laurinburg, North Carolina, before his release from custody.  [See Doc. 12].

John Doe, identified as the Warden of Lanesboro; (2) FNU Mott (hereinafter "Defendant Mohl"), identified as a Sergeant at Lanesboro; (3) FNU McCoy, identified as an officer of Lanesboro; and (4) David Guice, identified as the Secretary of the N.C. Department of Public Safety ("NCDPS").[2] [Doc. 17]. Plaintiff alleged that Defendant McCoy allowed another inmate to fashion weapons out of an exit sign grate in Plaintiff's pod at Lanesboro and McCoy either failed to report this incident to Defendant Mohl or Defendant Mohl failed to act thereon. The inmate, in turn, sold one such weapon to a third inmate who later violently attacked Plaintiff. Plaintiff also alleged that he filed a grievance after this incident and Defendant Beaver and unknown staff members retaliated by destroying evidence and falsifying reports related to the attack. [Id.]. Plaintiff's Eighth Amendment claims against Defendants Beaver, McCoy, and Mohl based on the failure to protect; Plaintiff's claims against Defendant Beaver based on retaliation for filing grievances and denial of access to the courts; and Plaintiff's claim for punitive damages

_____

[2] The Doe Defendant has since been identified as Kenneth Beaver. Although Beaver was not the Warden or Superintendent of Lanesboro, he responded to this lawsuit because, during the relevant time of Plaintiff's Amended Complaint (namely from July 2016 through on or about September 30, 2016), he was the highest ranking official at Lanesboro. [Doc. 58-1 at ¶ 3: Beaver Dec.]. Defendant FNU "Mott" has since been identified as James Mohl and Defendant FNU McCoy has since been identified as Monica McCoy. [Doc. 32].

2

survived initial review.[3]  [Doc. 19].  The Court appointed the North Carolina Prisoner Legal Services (NCPLS) for the limited purpose of conducting discovery on behalf of Plaintiff.  [Doc. 41 at 2].  At the close of the discovery period, NCPLS counsel advised the Court that she had assisted Plaintiff with conducting discovery and moved to withdraw as counsel, which the Court allowed.  [Docs. 53-55].

On December 16, 2020, Defendants moved for summary judgment. [Doc. 56].  In support of their motion, Defendants submitted a brief and their declarations.  [Docs. 57, 58-1 through 58-3].  On January 6, 2021, the Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the summary judgment motion and the manner in which evidence could be submitted to the Court.  [Doc. 59].  Plaintiff filed a response, signed under penalty of perjury, and a cross-motion for summary judgment based on

---

[3] Plaintiff's claims based on censorship of his mail and an unknown staff member's failure to deliver a grievance letter to Plaintiff's family were dismissed on initial review.  Also, Defendant Guice was dismissed as a defendant in this matter for Plaintiff's failure to state a claim against him.  [Doc. 19].  On initial review, the Court identified a separate surviving claim against Defendant Beaver based on the denial of Plaintiff's due process rights. [Doc. 19 at 7].  Further examination of Plaintiff's Amended Complaint, however, shows that Plaintiff's Fourteenth Amendment claim was bound with and based on Defendant Beaver's alleged denial of access to the courts and that Plaintiff did not allege a separate due process violation by Defendant Beaver.  These claims are, therefore, addressed herein as a denial of access to the courts claim only.  Plaintiff also asserted violation of his rights under the Fifth and Fourteenth Amendments based on conditions of confinement at Lanesboro.  [See Doc. 17 at ¶ 62].  The Court allowed those claims to pass initial review, [Doc. 19 at n.1], and addresses them below.

3

alleged spoliation of evidence.  [Doc. 62].

This matter is now ripe for adjudication.

## II.    STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party.  The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial."  Id. at 322 n.3.  The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat

a motion for summary judgment.[4]  Id. at 324.  Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" in the record.  See id.; Fed. R. Civ. P. 56(c)(1)(a).  Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party.  Anderson, 477 U.S. at 255.  A nonmovant, however, cannot create a genuine issue of material fact through speculation or a compilation of inferences.  Emmett v. Johnson, 532 F.3d 291, 297 (4th Cir. 2010).  "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'"  Ricci

---

[4] The Fourth Circuit, however, recently made clear that a district court is to consider verified prisoner complaints as affidavits on summary judgment "when the allegations contained therein are based on personal knowledge."  Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

The evidentiary forecast before the Court now consists of the materials submitted by Defendants, Plaintiff's response, and the allegations in Plaintiff's verified Amended Complaint made on his personal knowledge.

## III. FACTUAL BACKGROUND

In this case, Plaintiff asserts claims under the Eighth Amendment based on the prison official Defendants McCoy and Mohl's failure to protect him and based on Defendant Beaver's failure to maintain adequate staffing; and against Defendant Beaver for denial of access to the courts and for retaliation for filing grievances under the First Amendment. Plaintiff also makes various allegations of gross negligence against Defendants Beaver and Mohl based on their alleged failure to properly train and supervise subordinate staff.

The forecast of evidence in the light most favorable to the non-movant is as follows:

This matter arises from an incident that occurred on August 28, 2016 at Lanesboro wherein Plaintiff was repeatedly stabbed by a fellow inmate, as well as certain events occurring in the months before and weeks after this assault. At the relevant times, Defendant Beaver was the Assistant

Superintendent at Lanesboro and, from July 2016 through on or about September 30, 2016, was the highest ranking official at Lanesboro. [Doc. 58-1 at ¶ 2: Beaver Dec.]. Defendant McCoy was a correctional officer assigned to Lee Unit at Lanesboro. [Doc. 58-2 at ¶ 4: McCoy Dec.]. McCoy was responsible for overseeing inmates in that housing unit. [Id.]. Among other things, McCoy's duties included making rounds and standing post in the control booth. [Id. at ¶ 5]. When Lanesboro staffing levels allowed, rounds were required to be made hourly. [Id. at ¶ 7]. McCoy always made rounds when required as dictated by staffing levels. [Id.].

As a correctional officer, McCoy was instructed and trained to follow all policies and procedures related to keeping inmates safe. [Doc. 58-1 at ¶ 8]. This included checking all exit sign grates and other grates while making rounds to ensure they were not removed or otherwise tampered with. [Id.]. When McCoy was a control booth officer, she monitored activity in three pods, documented rounds, and monitored the corridor floor. [Doc. 58-2 at ¶ 10]. McCoy monitored activity via video monitors and by watching through the control booth's windows. [Id.]. Defendant Mohl was a Sergeant at

Lanesboro and was responsible for supervising correctional officers assigned to Lee Unit.[5]  [Doc. 58-3 at ¶¶ 2,4: Mohl Dec.].

In late June 2016, Plaintiff was housed in Alpha POD in Lee Unit.  [Id. at ¶ 13].  During the time that Plaintiff was on Lee Unit, a "culture of violence" had evolved at Lanesboro "due to staffs' habitual failures to follow safety [and] security protocols [and] procedures."  [Doc. 17].  Plaintiff was assigned to bunk 44, which is the last bunk in the row and next to one of two bathrooms upstairs.  [Id.].  There was an emergency exit, which was marked by an exit sign, less than two feet from the foot of Plaintiff's bunk.  [Doc. 17 at ¶ 14].  The exit sign was covered by "an approximately 1 ½['] x 8' x 4' wire grate" ("Exit Sign Grate").  [Id.].  There were six such emergency exits and grates in Alpha POD.  [Id.].  At the head of Plaintiff's bunk was a structural support column attached to which there was an "emergency/fire strobe light covered by an approximately 6' x 4' x 4' wire grate" ("Strobe Light Grate").  [Id. at ¶ 15].

One day in late June 2016, Plaintiff saw another inmate attempting to remove and take the Exit Sign Grate.  The inmate's efforts were thwarted,

---

[5] Defendant Mohl attests that, as a supervisor, he always instructed and trained his staff to follow all policies and procedures related to keeping inmates safe.  [Doc. 58-3 at ¶ 5].  Defendant Mohl claims that if he learned that a staff member failed to follow such policies and procedures, he would correct that staff member immediately and inform the staff member that there would be consequences for another such failure.  [Id.].

8

however, when Officer McCoy entered the POD to perform her "mandated safety [and] security rounds." [Id. at ¶ 16]. The inmate left the grate hanging precariously over the top of the exit door, secured to the wall by only one of the four mounting pegs. [Id. at ¶ 17]. As part of her duties and pursuant to NCDPS Policy & Procedure ("NCDPS Policy"), Chapter F, Section .1600, Management of Security Posts,[6] Defendant McCoy was required to secure exits and to inspect and ensure facility fixtures, such as wire grates covering exits signs, were in their proper place and secured. [Id. at ¶ 18]. While McCoy was making her rounds, Plaintiff observed her noticing the grate "was unusually out of place, scrutinizing the grate for several moments before continuing her rounds." [Id. at ¶ 19]. After McCoy left Alpha POD, the inmate resumed his efforts and was able to completely remove the Exit Sign Grate. He also removed the Strobe Light Grate. [Id. at ¶ 20]. The inmate immediately began to dismantle the grates and to sell pieces thereof,

---

[6] Plaintiff cites to various NCDPS policies throughout his Amended Complaint and in his summary judgment materials. [See Docs. 17, 62]. Although Plaintiff has not submitted any polices in support of his position on summary judgment, he does incorporate NCDPS Policy and "Lanesboro [Standard Operating Procedure (SOP)]" "by reference due to court protective order." [Doc. 62 at 2]. Lanesboro SOP is not part of the record in this matter. NCDPS Policy is, however, available online at ncdps.gov/adult-corrections/prisons/policy-procedure-manual. For the sake of economy and for purposes of this motion only, the Court will take judicial notice of NCDPS Policy. The Court notes, however, that the versions of the policies that would have been effective at the relevant times are not available online and the Court, therefore, relies on the currently available Policy.

including selling a piece to an inmate who later stabbed Plaintiff with the grate piece. [Id. at ¶¶ 22-23].

McCoy returned for security rounds two hours later. [Id. at ¶¶ 21, 24]. She entered Alpha POD and, upon reaching the exit door next to Plaintiff's bunk, she stopped and said, "What the hell," looking back and forth between where the grate used to be and the Plaintiff. The Plaintiff responded, "yeah, it's gone." [Id. at ¶ 24]. She continued her rounds and existed the POD.[7] [Id.].

McCoy was required to report the grate being out of place, and then missing completely, pursuant to NCDPS Policy, Ch. 5, § .1604(k). [Id. at ¶ 25]. McCoy either failed to report the issues with the grate to her supervisor, Defendant Mohl, or Mohl failed to act on McCoy's report. [Id. at ¶ 26]. Over the next 20 to 30 days, all but two of the six wire grates covering exit signs and several of the eighteen or so strobe light grates were taken by inmates and converted into shanks. [Id. at ¶ 27].

In late June 2016, Mohl was informed that some of the exit sign grates and other grates on Lee Unit were missing. Mohl also personally noticed that some grates were missing. [Doc. 58-3 at ¶ 7]. Mohl immediately made

---

[7] Defendant McCoy, on the other hand, attests that, while she worked as a correctional officer at Lanesboro, she "never saw that any grates were removed without authorization or were otherwise tampered with." [Doc. 58-2 at ¶ 9].

sure that the maintenance staff was notified and instructed to remove all remaining grates so those grates could not be removed or tampered with by inmates. [Id.]. Mohl also made sure that he and his officers "remained on the lookout for any metal pieces from missing grates." [Id.]. Defendant Beaver attests that he did not have personal knowledge that any exit sign or other grates at Lanesboro had been removed or tampered with by inmates. Beaver also attests that he did not know that pieces of any such grates were distributed to other inmates. [Doc. 58-1 at ¶ 5].

On August 28, 2016 at approximately 11:50 p.m. in Alpha POD in Lee Unit, an inmate attacked Plaintiff, using a piece of a grate the inmate acquired in June 2016. [Doc. 17 at ¶¶ 34-35]. There is no evidence that the shank was from the grate near Plaintiff's bed or from some other grate. The inmate stabbed Plaintiff many times all over his body and repeatedly tried to stab Plaintiff's eyes. [Id. at ¶¶ 36-52]. From his bunk, Plaintiff was able to see inside the control booth. [Id. at ¶ 54]. Right before the assault, Plaintiff noticed that McCoy was manning the control booth with her back to Alpha POD and the monitors and, as such he asserts that she was "improperly distracted" from her duties contrary to NCDPS policy. [Id. at ¶ 55 (citing NCDPS Policy, Ch. F, § .1603(e), § .1604(c), § .1605(a), (d), and (k); and § .1605(p))]. The assault was readily viewable by McCoy on the Alpha POD

camera monitors in the control booth, but McCoy was "holding a conversation with someone who stood … in the opposite direction … of the monitors." [Id. at ¶ 57].

Eventually, Plaintiff was able to get up and make his way downstairs to safety while the other inmate continued to threaten Plaintiff. [Id. at ¶ 63; see id. at ¶ 53]. Plaintiff pushed the emergency call button and watched McCoy in the control booth ignore the buzzer, continuing her conversation with her back to Alpha POD and the camera monitors, again in violation of NCDPS policy. [Id. at ¶ 63]. Plaintiff pushed the call button at least two more times before McCoy returned her attention to her post duties. She asked Plaintiff over the intercom what he needed. Plaintiff responded by holding up a bloody rag. She finally opened the door, allowing Plaintiff to get to safety and to seek medical care. [Id.]. During the assault, there was no floor officer on duty because Lee Unit was understaffed that day.[8] [Id. at ¶ 65].

_____

[8] Plaintiff alleges that staffing levels were the responsibility of Lanesboro's "head/warden and/or [Defendant] David Guice," citing NCDPS Policy, Ch. F., § 1603(a). [Doc. 17 at ¶ 66]. The provision provides, however, that, "[t]he Director of Prisons will ultimately be responsible for determining the number of security staff required to provide a safe and secure environment at each prison facility." NCDPS Policy, Ch. F, § .1603(a). The Court takes judicial notice that the Director of Prisons at the time of the incident at issue here was George Solomon, who is not a defendant in this matter. Moreover, Defendant Beaver attests that, as Assistant Superintendent, he had no control over how many correctional staff were hired to work at Lanesboro. [Doc. 58-1 at ¶ 9].

Case 3:18-cv-00641-MR   Document 64   Filed 07/20/21   Page 12 of 32

After the assault, the Unit Manager reviewed video footage and determined that Plaintiff had been assaulted by another inmate.  [Id. at ¶ 58].

The same day as the assault, Plaintiff was placed in segregation and remained there until November 1, 2016, when he was transferred to Tabor Correctional Institution.  [Id. at ¶ 69].  While in segregation at Lanesboro, Plaintiff asked segregation staff for grievance forms, which he was denied.  [Id. at ¶¶ 70-71].  Plaintiff, therefore, attempted to access the grievance procedure by writing his grievance complaint on regular notebook paper with one carbon copy.  He placed the carbon copy in an envelope and directed it to Captain Tucker.  The grievance, however, was never processed or responded to.  [Id. at ¶¶ 73-74].  Plaintiff attempted to mail the original grievance papers home, but his grievance was slid under his cell door approximately 20 days later with the postage torn off, opened, and marked with a sticker stating, "not deliverable as addressed."  [Id. at ¶¶ 75-79].  The mailing address was correct.  [Id. at ¶ 80].  In his grievance, Plaintiff requested that videos and investigation materials and witness statements be preserved for further proceedings.  [Id. at ¶ 90].

Sometime after the assault and Plaintiff's attempt to file a grievance, Lanesboro's "head or designee (warden) and/or other unknown staff member(s)" retaliated against Plaintiff.  Plaintiff alleges, upon information

and belief, that the video of the assault and of McCoy in the control booth; statements of Mohl, McCoy, and other staff members who investigated the assault; photographs of Plaintiff's injuries; and documents related to staff shortages on August 28, 2016, were all destroyed. [Id. at ¶¶ 84-88]. Plaintiff also alleges, upon information and belief, "under reporting and/or falsifying reports to doc safety office." [Id. at ¶ 89]. Plaintiff further alleges that Defendant Beaver either authorized the destruction of evidence that would disprove Defendants' Affidavits and prove Plaintiff's verified allegations or "there was a failure to train and properly supervise subordinate staff, which resulted in staff destroying evidence…."[9,10] [Doc. 62 at 3-4].

---

[9] Defendants' forecast of evidence includes only the individual Defendants' affidavits. [See Docs. 58-1 through 58-3]. They submit no records of any incident reports, witness statements, video footage, or other evidence related to the attack on Plaintiff.

[10] In contrast to Plaintiff's forecast of evidence, Defendant Beaver claims as follows. As Assistant Superintendent at Lanesboro, Beaver always instructed and trained staff to follow all policies and procedures related to keeping inmates safe. [Doc. 58-1 at ¶ 4]. If Beaver became aware that a staff member failed to follow such policies and procedures, Beaver would correct the staff member immediately and inform the staff member that he or she would face consequences if there was another such failure. [Id.]. Beaver has never destroyed any video of an inmate or staff assault; any video of McCoy; any written statements of McCoy, Mohl, or anyone else; or photos of Plaintiff's wounds or of any other inmates. [Id. at ¶¶ 10-13]. Beaver is not aware of nor has he ever destroyed any documents related to alleged staff shortages on August 28, 2016. [Id. at ¶ 14]. Beaver has never prevented or tried to prevent an inmate from accessing the grievance process or the courts. [Id. at ¶ 16]. Finally, Beaver claims he has never falsified reports to the NCDPS. [Id.].

## IV.    DISCUSSION

### A.    Failure to Protect

Claims under 42 U.S.C. § 1983 based on an alleged failure to protect fall within the Eighth Amendment's prohibition against cruel and unusual punishment.  Under the Eighth Amendment, "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners."  Farmer v. Brennan, 511 U.S. 825, 833 (1994) (quotation marks omitted).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  Id. at 834.

To be found liable under the Eighth Amendment based on a failure to prevent harm, the prisoner first "must show that he was incarcerated under conditions posing a substantial risk of serious harm."  Id. (citation omitted).  Next, the prisoner must show that the prison official had a sufficiently culpable state of mind.  Id. (quotation marks and citation omitted).  "In prison-conditions cases, that state of mind is one of deliberate indifference to inmate health or safety."  Id. (quotation omitted).    "Deliberate indifference" is measured subjectively.  The Supreme Court has described the standard as follows:

> [A] prison official cannot be found liable under the
> Eighth Amendment for denying an inmate humane

15

conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference…. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." … But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer, 511 U.S. at 837-38. A prison official is not liable if he knew the underlying facts but believed, even if unsoundly, that the risk to which the facts gave rise was insubstantial or nonexistent. Farmer, 511 U.S. at 837. Subjective awareness of a significant risk may be shown either through direct or circumstantial evidence of actual knowledge. Makdessi v. Fields, 789 F.3d 126, 132-33 (4th Cir. 2015). However, "prison officials who actually knew of a substantial risk to inmate safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." Farmer, 511 U.S. at 844. Nonetheless, the Supreme Court has also noted that,

If an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about

16

it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

Id. at 842-43 (quotation marks omitted).

Where prison official defendants in a failure to protect case are supervisors without personal involvement in the incident, such supervisors "may be held liable under a tacit authorization theory if that supervisor fails to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." Danser v. Stansberry, 772 F.3d 340, 350 (4th 2014) (citation omitted). Furthermore, "the Eighth Amendment requires more than some action: It requires reasonable action." Cox v. Quinn, 828 F.3d 227, 237 (4th Cir. 2016) (citing Farmer, 511 U.S. at 844, 114 S. Ct. 1970). Finally, "[w]hile occasional, isolated attacks by one prisoner on another may not constitute cruel and unusual punishment, … confinement in a prison where violence and terror reign is actionable." Woodhous v. Com. of Va., 487 F.2d 889, 890 (4th Cir. 1973) (internal citation omitted).

The forecast of evidence here, when viewed in the light most favorable to the Plaintiff, demonstrates that Defendant Mohl violated Plaintiff's rights under the Eighth Amendment. The forecast of evidence, however, is insufficient to proceed to a jury on Plaintiff's Eighth Amendment claims

against Defendants Beaver and McCoy.

### 1. Missing Grates

Defendant Mohl, in response to learning in late June 2016 that "some of the exit-sign grates and other grates on Lee Unit at Lanesboro CI were missing" and noticing some missing himself, made sure that maintenance staff was notified and instructed to remove all remaining grates. Mohl also made sure his officers "remained on the lookout for any metal pieces missing from missing grates."[11] [Doc. 58-3 at ¶ 7].

From this forecast a jury could reasonably infer that Defendant Mohl acted with deliberate indifference to a substantial risk of serious harm to the Plaintiff. A jury could conclude that merely telling subordinate officers to be "on the lookout" for dangerous weapons that were so obviously in the hands of prisoners in a prison wrought with a "culture of violence" was entirely unreasonable – a woefully deficient remedial action to alleviate the substantial risk. A jury could conclude that anything less than a thorough, comprehensive unit-wide search for the metal pieces from these grates was unreasonable. As such, genuine issues of fact on Plaintiff's claim against

---

[11] McCoy's testimony that she never knew about any missing grates at Lanesboro conflicts directly with Mohl's testimony that he advised his officers to be on the lookout for the missing grates. In any event, based on Plaintiff's forecast of evidence, a reasonable jury could find that McCoy knew about the missing grates.

Mohl based on his response to the missing grates remain for the jury.

The inquiry for Defendant McCoy is slightly different. "[C]onstitutional torts, like their common law brethren, require a demonstration of both but-for and proximate causation." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). Accordingly, "subsequent acts of independent decision-makers … may constitute intervening superseding causes that break the causal chain" and insulate prison officials from § 1983 liability. Id.; Kane v. Lewis, 604 Fed. App'x 229, 234-35 (4th Cir. 2015).

Here, the forecast of evidence is insufficient to show any proximate cause connecting Defendant McCoy's conduct related to the missing grates and the Plaintiff's injuries. Defendant Mohl admits to having been aware of the missing grates, whether he learned of this from McCoy or otherwise, and that he had even observed some grates missing himself. Accordingly, regardless of whether McCoy reported the missing grate to Mohl, Mohl was aware that grates were missing and acted, or failed to act, in response thereto. Moreover, there is no forecast of evidence showing that MCoy had any duty or authority relative to the missing grates beyond her duty to report the missing grates to Mohl. If McCoy reported the missing grates, she took "reasonable action" and thus was not deliberately indifferent. Cox 828 F.3d at 237; Farmer 511 U.S. at 844. If McCoy failed to report the missing grates,

it was of no consequence because her superior, Mohl, learned of this danger from some other source. As such, the intervening acts of Mohl, as McCoy's supervisor, under the circumstances here, break the causal chain and insulate McCoy from § 1983 liability.

Furthermore, Plaintiff alleges only that McCoy either failed to report the missing grate **or** Mohl failed to act on McCoy's report. This evidence is too speculative to go to the jury on a deliberate indifference claim against McCoy based on the missing grates. See Emmett, 532 F.3d at 297. A nonmovant cannot create a genuine issue of material fact by guesswork. For these reasons, the Court will grant Defendant McCoy's summary judgment motion on Plaintiff's deliberate indifference claim based on the missing grates.

Defendant Beaver, a supervisor who Plaintiff does not allege was personally involved in the incident, may only be held liable under a tacit authorization theory for failing "to take action in response to a known pattern of comparable conduct occurring before the incident at issue took place." Danser, 772 F.3d at 350. At best, Plaintiff alleges that McCoy's failure to report the missing grate (or Mohl's failure to act on such report) "indicates a pattern or custom for Lanesboro staff to fail to follow safety [and] security protocols." [Doc. 17 at ¶ 28; see also id. at ¶ 61]. Defendant Beaver, on the other hand, attests that he did not know that any exit sign or other grates had

been removed or tampered with by prisoners and did not know that pieces of any such grates were distributed to other inmates. [Doc. 58-1 at ¶ 5]. While the Court could speculate regarding previous patterns of comparable conduct at Lanesboro and Defendant Beaver's responses, or lack of responses, thereto, the forecast of evidence before the Court does not support a claim against Defendant Beaver for the failure to protect Plaintiff. Moreover, Defendant Beaver was the highest-ranking officer at Lanesboro from only July 2016 through September 30, 2016, which would further undermine inferences involving his tacit authorization of conditions at Lanesboro.[12] The Court, therefore, will grant Defendant Beaver's motion for summary judgment on this claim.

In sum, the forecast of evidence supporting Plaintiff's Eighth Amendment claim against Defendant Mohl based on the missing grates is sufficient to go to the jury. The forecast of evidence on Plaintiff's claims against Defendants McCoy and Beaver on this issue, however, is not. These claims will be dismissed.

---

[12] Defendants construe Plaintiff's Amended Complaint as asserting claims against Defendants Mohl and Beaver based on *respondeat superior*. [Doc. 57 at 21-23]. The Court does not so construe Plaintiff's Amended Complaint and no such claims were recognized on initial review. [See Doc. 19]. The Court, therefore, will not further address these claims.

## 2. Inattention at Control Booth

Plaintiff also asserts an Eighth Amendment failure to prevent harm claim against Defendant McCoy based on McCoy's inattention at the control booth during the attack on Plaintiff. The forecast of evidence shows that Lanesboro had evolved into a "culture of violence" due to the staffs' failure to follow safety and security protocols and procedures.[13] The forecast of evidence also shows that McCoy was aware of at least one missing grate near Plaintiff's bed. From this, Plaintiff argues the inference that McCoy knew about the likely prolific presence of metal shanks in Lee Unit. As addressed *supra*, this is insufficient standing alone. Plaintiff seeks to buttress this with a forecast of evidence that he witnessed McCoy being inattentive at the control booth during and immediately after his assault. It is, however, uncontroverted that while McCoy was on duty as a control booth officer that she monitored activity in three different pods and a corridor. There is no forecast of evidence as to what distracted McCoy's attention during the assault on Plaintiff. Plaintiff merely offers speculation that such distraction was improper.

---

[13] Plaintiff focuses much of his argument on whether the Defendants followed the safety and security protocols and procedures. Such internal regulations, however, are not relevant to an Eighth Amendment claim for deliberate indifference. As to the deliberate indifference standard, Plaintiff's forecast is lacking.

Based on this forecast no reasonable jury could conclude that Defendant McCoy was deliberately indifferent to a substantial risk of serious harm to Plaintiff. Without a forecast of evidence of what distracted McCoy from monitoring Alpha POD during the assault on Plaintiff, and whether such distraction was related to her other duties as control booth officer, the Plaintiff has failed to show that McCoy had a "sufficiently culpable state of mind."[14] Farmer, 511 U.S. at 834. Moreover, there is no forecast of evidence of how long the assault lasted or that McCoy could have prevented or shortened the assault even with no distractions.

The Court will, therefore, grant Defendant McCoy's motion for summary judgment on Plaintiff's deliberate indifference claim based on McCoy's inattention at the control booth.[15]

---

[14] Plaintiff also asserts claims for deliberate indifference to a substantial risk of harm and to a serious medical need based on McCoy's failure to respond to Plaintiff's attempts to get to safety when Plaintiff used the emergency call button. [Doc. 17 at ¶¶ 63-64, 68]. Plaintiff, however, does not forecast evidence of having suffered any injury or damages as a result thereof. These claims are, therefore, dismissed. See Emmett, 532 F.3d at 297.

[15] Plaintiff also purports to assert violation of his rights under the Fifth and Fourteenth Amendments based on Defendants' failure to provide him with a reasonably safe housing environment as evidenced by McCoy's and Mohl's alleged conduct. [Doc. 17 at ¶¶ 31, 62]. While prison conditions are certainly relevant to an Eighth Amendment inquiry, the Plaintiff has presented no forecast to support such a claim. These claims will, therefore, be dismissed.

### 3. Understaffing

Finally, Plaintiff asserts a deliberate indifference claim against Defendant Beaver based on understaffing at Lanesboro. Plaintiff alleges that Lanesboro was regularly understaffed, which caused Defendant McCoy to be unable to perform timely security rounds in June 2016. [Doc. 1 at ¶ 32]. Plaintiff also alleges that there was no floor officer on duty on August 28, 2016, the day Plaintiff was attacked, because Lee Unit was understaffed. [Id. at ¶ 65]. Plaintiff alleges that "safe staffing levels" are the responsibility of the Warden at Lanesboro and/or former Defendant Guice. [Id. at ¶ 66]. The relevant forecast of evidence, however, shows that the Director of Prisons is "ultimately [ ] responsible for determining the number of security staff required to provide a safe and secure environment at each prison facility," [NCDPS Policy, Ch. F, § .1603(a)], and that Defendant Beaver did not control how many correctional staff were hired to work at Lanesboro, [Doc. 58-1 at ¶ 9]. As such, even if understaffing could be the basis of a deliberate indifference claim, the forecast of evidence does not support such a claim against any Defendant named in this case. Accordingly, the Court will grant summary judgment for Defendant Beaver on Plaintiff's deliberate indifference claim based on staffing levels.

## B. Retaliation and Denial of Access to Courts

Plaintiff claims that Defendant Beaver violated his rights under the First Amendment by retaliating against him for filing a grievance by destroying evidence related to the incident and, thereby, denying Plaintiff access to the courts. Specifically, Plaintiff alleges that "Lanesboros' [*sic*] designee (warden) and/or other unknown staff member(s)" violated Plaintiff's right of access to the courts in retaliation for Plaintiff filing a grievance by, upon information and belief, destroying and falsifying evidence related to the August 28, 2016 attack on Plaintiff and other records supportive of Plaintiff's claims here. [Doc. 17 at ¶¶ 82-88; see also Doc. 62 at 3-4]. Plaintiff presents only these speculative allegations made on information and belief in support of these claims, which are insufficient to meet the evidentiary burden on summary judgment. See Goodman v. Diggs, 986 F.3d at 498 (verified prisoner complaints are to be considered as affidavits on summary judgment only "when the allegations contained therein are based on personal knowledge"). Defendant Beaver, on the other hand, attests that he did not destroy or falsify any evidence or statements related to the incident at issue here. [Doc. 58-1 at ¶¶ 10-15]. Plaintiff's conjecture is insufficient to refute this testimony. As such, Plaintiff's claim against Defendant Beaver on this issue will be dismissed.

## C.    Failure to Train and Supervise

Plaintiff contends that Defendant McCoy's conduct in the control booth indicates that Defendant Beaver and Defendant Mohl were grossly negligent in failing to properly train and supervise subordinate staff, including Defendant McCoy, and in failing to correct staff's habitual failures to follow safety procedures.  [Doc. 17 at ¶¶ 60-61, 64].  To the extent Plaintiff intended to assert a separate claim on this issue, the forecast of evidence is insufficient to go to the jury thereon.   Even if Defendant McCoy was inattentive to her duties in the control booth on a single occasion, without more, Plaintiff's evidence is insufficient to show a grossly negligent failure to train or supervise McCoy.  See Jordan v. Jackson, 15 F.3d 333, 341 (4th Cir. 1994) ("[N]either a policy or custom of deficient training nor the required causal connection can be shown by proof of a single incident of unconstitutional activity alone.").  The Court, therefore, will grant summary judgment for Defendants Beaver and Mohl on this issue.

## D.    Punitive Damages

Plaintiff seeks punitive damages against Defendants in this matter. [Doc. 17 at 20].  A jury may award punitive damages in an action under § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally

protected rights of others." <u>Smith v. Wade</u>, 461 U.S. 30 (1983). Defendants argue that Plaintiff's punitive damages claim is without merit because Plaintiff failed to allege, and the evidence does not show, that Defendants acted with evil motive or intent or with recklessness and callousness. [Doc. 57 at 20-21]. Defendants ignore that Plaintiff's claims for deliberate indifference easily connote recklessness. <u>Cooper v. Dyke</u>, 814 F.2d 941, 948 (4th Cir. 1987) ("The callous indifference required for punitive damages is essentially the same as the deliberate indifference required for a finding of liability on the § 1983 claim."). Although Plaintiff did not use certain technical terms to state a punitive damages claim, his allegations, and the forecast of evidence, support that Defendant Mohl acted with recklessness and callousness. As such, Plaintiff's claim for punitive damages against Defendant Mohl survives summary judgment. Plaintiff's punitive damages claim against Defendants Beaver and McCoy will, of course, be dismissed as no claims of constitutional violations against him remain.

### E. Qualified Immunity

Additionally, Defendants argue they are entitled to qualified immunity. [Doc. 57 at 23-24]. Qualified immunity shields "government officials performing discretionary functions … from liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known."
Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "It has long been established
that jail officials have a duty to protect inmates from a substantial and known
risk of harm, including harm inflicted by other prisoners." Cox v. Quinn, 828
F.3d 227, 239 (4th Cir. 2016) (citing Farmer, 511 U.S. at 833). Here, the
forecast of evidence shows that Defendant Mohl learned that a significant
number of weapons were in the hands of prisoners yet failed to take any
meaningful action to locate the weapons. As such, Defendant Mohl enjoys
no immunity here as to the Eighth Amendment claim that remains against
him. Defendants Beaver and McCoy, on the other hand, are entitled to
qualified immunity because the forecast of evidence does not support any
constitutional violations by them under § 1983.

### F. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff has moved for summary judgment "based upon, inter alia,
spoliation and prejudicial hinderance of pursuing this claim." [Doc. 62 at 4].
As grounds, Plaintiff claims "[e]ither [Defendant] Beaver authorized the
destruction of evidence that would disprove defendant[s'] affidavits and
prove every allegation in plaintiffs [*sic*] verified complaint … or there was a
failure to train and properly supervise subordinate staff which resulted in staff
destroying evidence." [Id. at 3-4].

28

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Silvestri v. General Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001) (citations omitted). The spoliation of evidence may give rise to court-imposed sanctions deriving from a court's inherent power to control the judicial process and litigation. Id. A court may, for instance, order dismissal, grant summary judgment, or permit an adverse evidentiary inference drawn against a party who destroys relevant evidence, to "level the evidentiary playing field and for the purpose of sanctioning improper conduct." Hartford Ins. Co. of Midwest v. American Automatic Sprinkley Systems, Inc., 23 F.Supp.2d 623, 626 (D. Md. 1998) (quoting Vodusek v. Bayliner Marine Corp., 71 F.3d 148, 156 (4th Cir. 1995)). The adverse inference "suggests that the destroyed evidence would have been favorable to the party responsible for its destruction." Id. at 627 (citations omitted). Acts of spoliation, however, do not themselves give rise in civil cases to substantive claims or defenses. Silvestri, 271 F.3d at 590.

A party seeking sanctions for spoliation must prove the following elements:

> (1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence

that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

Goodman v. Praxair Services, Inc., 632 F.Supp.2d 494, 509 (2009) (quoting

Thompson v. U.S. Dep't of Housing & Urban Development, 219 F.R.D. 93, 100 (D. Md. 2003)).

Here, Plaintiff moves for summary judgment in his favor based on Defendant Beaver's alleged destruction of evidence. Plaintiff argues that Defendant Beaver had final authority to approve destruction of evidence, including videos of the incident and photographs of Plaintiff's injuries, and that, upon information and belief, Beaver "authorized the destruction of evidence that would disprove" Defendants' affidavits and prove Plaintiff's case. [Doc. 62 at 2-3; Doc. 17 at ¶ 83]. Plaintiff also argues that he "requested in his grievance, prior to their destruction that the videos and photos be preserved for purposes of the present litigation," but that Defendant Beaver approved their destruction in retaliation for Plaintiff filing a grievance, or attempting to file a grievance, regarding the incident. [Doc. 62 at 5; Doc. 17 at ¶¶ 82-83]. While it is certainly quite curious that Defendants have submitted no prison records or other evidence related to the attack on Plaintiff in support of their summary judgment motion other than

their bare affidavits, Plaintiff's assertion of a causative link between his filing of the grievance and the absence of the videos and photographs is conjecture. Even though Plaintiff has met most of the elements for showing spoliation, he has not shown at this stage of the proceedings that Defendant Beaver destroyed or authorized the destruction of the evidence. Allegations made on information and belief are without evidentiary value on summary judgment. Goodman v. Diggs, 986 F.3d at 498. This is clearly insufficient to grant judgment in Plaintiff's favor. This is, however, without prejudice to Plaintiff raising the issue at trial, for instance in a request for a spoliation instruction, if the evidence warrants such. See Hartford Ins. Co., 23 F.Supp.2d at 626.

## V.    CONCLUSION

In sum, for the reasons stated herein, the Court denies summary judgment for Defendant Mohl on Plaintiff's Eighth Amendment claim based on Mohl's response to the missing grates; for Defendant Mohl on Plaintiff's punitive damages claim; and for Defendant Mohl based on qualified immunity. The Court grants summary judgment for Defendants on all other claims. Finally, the Court denies Plaintiff's motion for summary judgment.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendants' Motion for Summary Judgment [Doc. 56] is **DENIED IN PART** as to Plaintiff's Eighth Amendment and punitive damages claims against Defendant Mohl in accordance with the terms of this Order and **GRANTED IN PART** as to all remaining claims by Plaintiff.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. 62] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants Beaver and McCoy are **DISMISSED** as Defendants in this matter.

**IT IS SO ORDERED.**

Signed: July 20, 2021

Martin Reidinger
Chief United States District Judge